DOYLE ELLIS
Attorney Pro Se
Utah State Prison
P.O. Box 250
Draper, Utah 84020

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JUL 2 9 2003

MARKUS B. ZIMMER, CLERK
BY:_____
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
CENTRAL DIVISION

---

DOYLE ELLIS, )
 ) Judge Paul G. Cassell
  Plaintiff, ) DECK TYPE: Civil
 ) DATE STAMP: 07/09/2003 @ 13:43:01
v. ) CASE NUMBER: 2:03CV00590 PGC
 )
BRUCE BURNHAM, Medical Director ) CIVIL RIGHTS COMPLAINT AND
At the Central Utah Correctional Facility, ) DEMAND FOR JURY TRIAL
Individually; )
RICHARD GARDEN, Medical Director, )
At the Utah State Prison, individually; )
ERIC SCHLOSSER. Ph.D. )
At the Central Utah Correctional Facility, )
individually; )
SARA DONALDSON, Medical Service )
Administrator at the Central Utah Correctional )
Facility, individually; )
KENNON TUBBS, M.D. at the Utah )
State Prison, individually; )
PAUL McGARRY, M.S.W. at the Central )
Utah Correctional Facility, individually; )
KRISTI BROWN, R.N. at the Utah )
State Prison, individually; )
LISA SOPER, R.N. at the Central Utah )
Correctional Facility, individually; )
JOHN DOES 1-10, employees at )
Utah State Prison and Central Utah )
Correctional Facility, individually, )
 )
  Defendants. )

---

## JURISDICTION



1. Doyle Ellis, is a citizen of Utah, who presently resides at the Utah State Prison, P.O. Box 250, Draper, Utah 84020.

2. Defendant Bruce Burnham is a citizen of Utah, and is employed as the Medical Director at the Central Utah Correctional Facility for the Utah Department of Corrections. At the time the claim(s) alleged in this complaint arose, this defendant was acting under color of state law in that he is the Medical Director at the Central Utah Correctional Facility for the Utah Department of Corrections and is directly responsible for the wrongful actions alleged herein.

3. Defendant Richard Garden is a citizen of Utah, and is employed as the Medical Director at the Utah State Prison for the Utah Department of Corrections. At the time the claim(s) alleged in this complaint arose, this defendant was acting under color of state law in that he is the Medical Director at the Utah State Prison for the Utah Department of Corrections and is directly responsible for the wrongful actions alleged herein.

4. Defendant Erik Schlosser, is a citizen of Utah, and was employed as a Psychologist at the Central Utah Correctional Facility for the Utah Department of Corrections. At the time the claim(s) alleged in this complaint arose, this defendant was acting under color of state law in that he is a Psychologist at the Utah State Prison for the Utah Department of Corrections and is directly responsible for the wrongful actions alleged herein.

5. Defendant Kennon Tubbs is a citizen of Utah, and is employed as a Medical Doctor at the Utah State Prison for the Utah Department of Corrections. At the time the claim(s) alleged in this complaint arose, this defendant was acting under color of state law in that he is a Medical Doctor at the Utah State Prison for the Utah Department of Corrections and is directly responsible for the wrongful actions alleged herein.

6. Defendant Sara Donaldson is a citizen of Utah, and was employed as the Medical

Service Administrator at the Central Utah Correctional Facility for the Utah Department of Corrections. At the time the claim(s) alleged in this complaint arose, this defendant was acting under color of state law in that she is the Medical Service Administrator at the Central Utah Correctional Facility for the Utah Department of Corrections and is directly responsible for the wrongful actions alleged herein.

7. Defendant Paul McGarry, is a citizen of Utah, and was employed as a Licensed Clinical Therapist Supervisor at the Central Utah Correctional Facility for the Utah Department of Corrections. At the time the claim(s) alleged in this complaint arose, this defendant was acting under color of state law in that he is an Licensed Clinical Therapist Supervisor at the Central Utah Correctional Facility for the Utah Department of Corrections and is directly responsible for the wrongful actions alleged herein.

8. Defendant Kristi Brown, is a citizen of Utah, and was employed as an R.N. at the Utah State Prison for the Utah Department of Corrections. At the time the claim(s) alleged in this complaint arose, this defendant was acting under color of state law in that she is an R.N. at the Utah State Prison for the Utah Department of Corrections and is directly responsible for the wrongful actions alleged herein.

9. Defendant Lisa Soper, is a citizen of Utah, and was employed as an R.N. at the Central Utah Correctional Facility for the Utah Department of Corrections. At the time the claim(s) alleged in this complaint arose, this defendant was acting under color of state law in that she is an

R.N. at the Central Utah Correctional Facility for the Utah Department of Corrections and is directly responsible for the wrongful actions alleged herein.

10. Defendant John Does 1-10, whose true names are unknown and when true names are ascertained the pleadings will be amended accordingly, are citizens of Utah, and are employed at the Utah State Prison and/or the Central Utah Correctional Facility. At the time the claim(s) alleged in this complaint arose, these defendants were acting under color of state law in that they are employees for the Utah Department of Corrections and are directly responsible for wrongful actions alleged herein.

11. Jurisdiction is invoked pursuant to 28 U.S.C. Sec. 1343 (3); 42 U.S.C. 1983.

## B. NATURE OF CASE

1. Plaintiff complains that he suffers from several physical and medical infirmities that the defendants deny and refuse to provide adequate and necessary medical treatment.

2. Plaintiff suffers from degenerative arthritis and degenerative disc disease in his back. Plaintiff has repeatedly informed the defendants of this medical condition since he was first incarcerated in October, 1995, but plaintiff did not receive any type of medication and/or treatment at that time. In or about November, 1995, plaintiff was transferred to the Central Utah Correctional Facility. Plaintiff informed Dr. Burnham about his back condition and was briefly treated with NSAIDS, which did not provide relief to plaintiff. In or about November, 1998, plaintiff met with Dr. Nusbaum and he denied plaintiff's request for pain management and treatment for his back.

4

3.      On or about September 13, 1999, Plaintiff slipped and fell at the prison³ causing additional pain and suffering to his back which plaintiff contends expanded the back injury diagnosis to his upper back and neck and resulted in the plaintiff suffering from a pinched nerve at the C7-T1 level. Dr. Burnham prescribed one series of physical therapy treatment, Plaintiff was to receive a follow-up evaluation for his back condition within six months. However, no follow-up evaluation was ever provided to the plaintiff until January, 2003. As a result of the denial and lack of adequate medical treatment the plaintiff now suffers severe degenerative disc disease and severe arthritis of his spine and with painful bone spurs.

4.      The defendants did not request and obtain any of plaintiff's medical records from his private physicians that had treated him prior to incarceration, until April, 1999. Plaintiff's medical records now indicate that plaintiff suffers from a chipped vertebra which should have been diagnosed on August 7, 2000, after plaintiff slipped in a shower that had the handicap handrails removed. Thus, the defendants failed to provide adequate medical treatment for the plaintiff's serious back injury and subjected the plaintiff to unnecessary pain and suffering by failing to provide medication and treatment for his condition.

5.      Plaintiff's pinched nerves have worsened, causing continuous partial numbness in plaintiff's right hand and fingers. Thus, Plaintiff's ability to grasp or hold items and to write is impaired. Plaintiff complains that numbness occasionally affects both arms and sensations of electricity shoot down one or both arms. Plaintiff appears to be in danger of losing the use of one or

both arms. The regular strong aches in plaintiff's right shoulder and arm interfere with rest and sleep. The consequent exhaustion increases the incidents of chest pains, mental confusion and forgetfulness. The pain medicine prescribed for plaintiff's arthritis has proven inadequate to contain the increases of steady pain and frequent sharp pains that occur. Plaintiff fears he will soon be unemployable and will lose his job.

6.   Plaintiff complains that he was denied adequate medical treatment for a prostate condition. Plaintiff was initially diagnosed with a possible prostate condition in 1996 when a needle biopsy, with ultrasound, was performed at the Gunnison Hospital. Plaintiff was informed that the lab results indicated cells that could turn cancerous along with normal cells. In or about December, 1997, another needle biopsy was performed. The tissue samples taken after a cursory ultrasound exam at routinely sampled predetermined sites were normal. However, continued high blood levels of PSA prompted the UMC urologist to place plaintiff in a watchful waiting. The UMC urologist informed the plaintiff that cancer could develop at any time. The UMC urologist ordered that the PSA's be evaluated every three (3) or four (4) months. Said testing was not done.

7.   In or about August, 2001, plaintiff noticed blood in his underwear about four times and blood in his urine was detected by the medical staff in September, 2001. Plaintiff reported the incidents to Dr. Burnham, who had replaced Dr. Christensen at the Gunnison facility. Plaintiff attempted to explain to Dr. Burnham what Dr. Christensen had told him, but Dr. Burnham refused to listen to the plaintiff. In fact, Dr. Burnham informed the plaintiff that Dr. Christensen was no longer

in charge of Plaintiff's case and that what he , (Dr. Burnham), said goes. Plaintiff requested a referral to the UMC urology, but was denied. Plaintiff reminded Dr. Burnham of his many conditions, including the increase is PSA, blood urine, disc disease, degeneration and arthritis was not all his imagination "somatizing"[8], as claimed by Dr. Burnham. However, plaintiff was still denied medical treatment due to his status as a prisoner. Dr. Burnham said that part of prisoner's punishment is pain and suffering.[9]

8. Plaintiff grieved the issue and was informed that a PSA once a year was sufficient.[10] Thus, the defendants failed to follow the recommendations from the UMC urologists.

9. Plaintiff was transferred to the Draper facility, and requested a PSA test. Physician Assistant Raymond Merrill ordered the PSA test. On or about June 4, 2002, approximately nine months after plaintiff requested the test from Dr. Burnham, the test was performed. The PSA level was 12.0 Plaintiff was referred to the UMC by Dr. Tubbs. On or about June 28, 2002, a consultation was done at the UMC and a biopsy was ordered by Dr. Lai. Dr. Garden delayed the biopsy and ordered another PSA for September, 2002.[11] Plaintiff had been informed by Dr. Christensen in 2001 that he probably had prostate cancer and that the second needle biopsy missed it. By September, 2002, plaintiff PSA level was 23.5. On or about October 6, 2002, Dr. Masterson recommended that plaintiff's PSA level be checked every six months. Another needle biopsy of routine and predetermined sites was completed in November, 2002. It was reported to plaintiff that the biopsy was negative. However, plaintiff again reported to Dr. Barabbas what Dr. Christensen had indicated

and informed Dr. Barabbas that neither biopsy had been done after an ultrasound as thorough as the first done by Radiologist, Dr. Bevan V. Bastian, M.D. at the Gunnison Hospital. Plaintiff was informed that the PSA levels would be checked every six months and if the PSA level remained high another biopsy would be completed as had UMC Urologist Dr. Blake Hamilton in his letter dated December 23, 1997. On March 4, 2003, plaintiff PSA level was 30.5 and on March 21, 2003, plaintiff was informed by Dr. Reynolds that a percent free PSA would be performed. If the percent free PSA level was low it meant that plaintiff had cancer. He recommended that the PSA be done every three months as had been ordered in 2000. The percent free PSA has yet to be done.

10. Plaintiff filed grievances regarding the denials and delay in adequate medical treatment at the Utah State Prison and Central Utah Correctional Facility. Plaintiff requested a definitive answer why the PSA levels had been elevated and that some measures be taken to correct the problem. In plaintiff's opinion the test results and his family history would indicate that the cancer has spread. Plaintiff's grievance was not resolved and was denied.

11. Plaintiff complains that as a result of the denial and delay in medical treatment has caused him severe prolonged physical and emotional stress and anxiety further affecting his heart, already faltering. During the period from September, 2001 to November, 2002, plaintiff has experienced several incidents of cardiac arrest in which he has lost consciousness. Due to the loss of consciousness, the plaintiff is now concerned about brain damage. Thus, the plaintiff's stress continues.

12. Plaintiff further complains that prior to being incarcerated he was treated for a serious sinus infection which plaintiff was informed was life threatening. Plaintiff was left with "Bells Palsy". Plaintiff was informed that if the condition returned he would need to immediately go to the nearest emergency room for treatment. Plaintiff was informed that he may have to undergo surgery to correct the problem if it recurred. When Plaintiff continued to suffer from sinus problems and informed the defendants of such, plaintiff was denied medical treatment for this condition by the defendants and as a result his life has been placed in danger and at risk.

13. Since plaintiff's incarceration he has been denied continuous medication and treatment for his serious sinus condition, as ordered by Intermountain Allergy Clinic doctors prior to incarceration, despite several requests indicating that plaintiff suffered from sinus headaches, sinus infection and frequent discharge of blood and infected material. Thus, defendants have violated the petitioner's rights and subjected him to cruel and unusual punishment.

14. Plaintiff contends that the defendants have breached a patient/client privilege to privacy by discussing with plaintiff and other staff the plaintiff's medical condition in and psychiatric problems while other inmates and staff and in Offenders Management Review Committee meeting were within earshot, said actions have caused plaintiff severe embarrassment, emotional and physical distress and ridicule and harassment from other inmates and staff.

15.     Plaintiff possesses copies of medical and other records that document his claims, and others are discoverable. Affidavits and documents that substantiate plaintiff's claims are also in his possession.

### C. INJURY

1.     Plaintiff feared retaliation, which took place, reprisals, loss of privileges and a longer sentence from the defendants when he requested treatment and voiced his concern about his medical condition and lack of medical treatment. Plaintiff was transferred to Draper in retaliation for contemplating legal action. Plaintiff contends that his condition became so painful and severe that he contemplated and attempted suicide, knowing that this would be, and was, viewed as an attempt to manipulate the system and he would be, and he was, further punished and treated inhumanely by the defendants causing him more severe suffering than he was already being required to endure.

2.     Plaintiff's musckuloskeletal system showed minimal damage prior to his being incarcerated. Since incarceration and due the lack of medical treatment the plaintiff now suffers severely. Plaintiff is unable to bend forward and/or twist from side to side because he would "blow out" his back if he did so, according to USP Infirmary Physical Therapist, James Armstrong. Plaintiff suffers from degenerative disc disease and degenerative arthritis with bone spurs as a result of the defendants actions and lack of adequate and proper medical care for his medical condition.

3.     As a result of the defendants actions and lack of adequate and proper medical care the plaintiff has developed and suffers severe heart problems.

4. Due to the defendants deliberate indifference and lack of medical care for plaintiff's prostate condition, the plaintiff's risk of dying from prostate cancer has been increased. Thus, the defendants have placed the plaintiff's life in danger.

5. Plaintiff suffers from gastritis and stomach problems and is unable to eat citrus foods and has difficulty eating most of the food that is served as meals due to the stomach pains consequent to unrelieved stress. The recent increases in pain and stress have caused nausea and recurrences of gastritis.

6. Plaintiff lost income due to his inability to work for approximately four years. In addition, plaintiff has lost self esteem and has been perpetually deterred from filing litigation due to concerns that his medical and mental health would not allow him to pursue the claims in court. Also, Plaintiff was denied access to grievance forms, the contract attorneys and mail due to being placed in strip cell, and he fears his case would be dismissed if this happened during litigation.

7. Plaintiff's overall physical and mental stamina have been diminished to the point that his current job is in jeopardy and plaintiff does not anticipate that he will be able to perform his job next school year.

8. Plaintiff has been unable to participate in sports and unable to walk for exercise due to the pain and suffering. Thus, plaintiff's quality of life has been diminished.

9. Plaintiff has been unable to complete writing a book that has been repeatedly requested. Thus, plaintiff has lost income and is unable to be productive in a positive way.

11

10.     Plaintiff expects to die or be so disabled as to be non-functional at any time. The cardiac arrests that resulted in loss of consciousness seem to have caused brain damage. Plaintiff cannot remember or perform some tasks that he did easily before the periods of unconsciousness. Also denial of effective medication in the past and present has diminished plaintiff's capacity to avoid suicidal tendencies and attempts.

## CAUSE OF ACTION

1.      Plaintiff alleges that the following constitutional rights, privileges or immunities have been violated and that the following facts form the basis for the allegations:

Count I: Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment has been violated by defendants actions in that they have denied him medical treatment for his serious back condition, heart condition, serious prostate condition and serious sinus condition, resulting in the plaintiff being subjected to cruel and unusual punishment.

Count II: Plaintiff's Fifth and Fourteenth Amendment rights to due process have been violated by defendants actions in denying medical care equivalent to that available in the community and failing to follow federal guidelines and abide by prescribed procedural grievance requirements in a timely manner.

## D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1.      Plaintiff has not filed any other law suits in state or federal court dealing with the same facts involved in this action.

2.      Plaintiff has previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of herein to no avail.

### E. REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

    a)    Trial by jury.

    b)    That counsel be appointed to represent the Plaintiff in this action.

    c)    Punitive damages in the amount of $10,000.00 per defendant.

    d)    Compensatory damages in the amount of $10,000.00 per defendant.

    e)    Order that plaintiff's medical conditions be immediately evaluated and that adequate and proper medical treatment be provided.

    f)    Order an injunction against any type of retaliation, including confiscation of legal paper, work product and other legal materials as has been done, for plaintiff exercising his constitutional rights to redress.

    g)    Declare that the acts and omissions addressed herein violated the plaintiff's rights under the United State Constitution and Utah Constitution.

    h)    Grant attorney fees and court costs for this action.

    i)    Such other and further relief the court deems just and proper.

DATED this _____ day of _____, 2003.

_____
DOYLE ELLIS
Plaintiff

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. Sec. ~~1976~~ 1746. 18 U.S.C. Sec. 1621.

EXECUTED at _____ on _____, 2003.

                                                          _Doyle Ellis_

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.